Good morning and may it please the court, I'm John Grebelius on behalf of Steven Shobert. Your honors, I do intend to try to reserve rebuttal time this morning, but of course I'll monitor my own time. When Mr. Shobert was in the emergency room, Sergeant Oberth asked for consent to search his home. And here is what Oberth conveyed, quote, per your court conditions and per the county attorney, if you'll allow us to go in and get your firearms from your house and keep them as safekeeping at the law enforcement center until your trial is over with, then we can do a medical furlough so that you can get the treatment that you need. And Deputy McClain testified that my client responded, yes, he needed medical care. Nothing in the record, your honors, contradicts these quotes that I just read that show that Oberth's statements logically entailed that my client's medical care was conditioned on his consent to search. In fact, Sergeant Oberth himself, when responding to the court's questions about what he said at this time, testified, quote, after I explained to him that we needed to get him his medical treatment and we can't afford to have somebody sit on him the entire time, he gave consent. The only real debate here, your honors, is not what was said or who was credible, but what Oberth's statements logically implied. Do you disagree with the district court's assessment then? Because it said while the testimony was back and forth regarding what exactly was stated to Mr. Schilbert, you're saying it was consistent with what you just said throughout. Yes, the precise words used may have been unclear, but the logical implications of what he said were clear and certainly consistent throughout all of the testimony. In fact, I would point the court to page 113 in volume four when the district court is having a back and forth with defense counsel when she's making her closing argument at the hearing. And here's what the court says. But the question here isn't necessarily what the order, the furlough order, says, but what the officer told Mr. Schilbert. And as I understood it, he said, so that you can continue to get your medical treatment and whatnot in meeting conditions of bond. So, your honors, the officer's bottom line denials that there was a threat made or that the officer never said, Mr. Schilbert, if you don't consent, you won't get your treatment, doesn't resolve the issue. Well, what if the officers, the deputies, were pure hearted and it's just clumsy language that they use? Where would that leave us? Well, it would still be coercive, your honors. We look at the test from a reasonable person in Mr. Schilbert's shoes. And if he's hearing that his treatment is conditioned on consent, that's all that matters. I'm not standing before this court telling your honors that the law enforcement here had evil intentions or were not trying to do their work. However, what was conveyed to my client was unequivocally that, hey, yes, if you want medical treatment, you need this furlough, and to get that furlough, you need to consent. That's not the way it was framed. I mean, the way it was framed was a word salad. I mean, it's not clear to me at all what one would logically take from that. And so if you reference logical inference, well, if the district court came to a different logical inference and were under clear error review, where does that leave you? Because, I mean, if there are two permissible views of what the evidence would be, then you lose. Well, Your Honor, my position is that the district court's conclusion that the sergeant didn't even suggest that treatment was conditioned on consent is unsupported by the record and contradicted by everything that was said regarding that conversation. Nothing contradicts, again, what the deputy testified about what was said. I'm not even sure what that means, frankly. The language that you read to me, it wasn't clear. I mean, what he did not say is, I am telling you, Mr. Schobert, that your ability to get medical care is conditioned upon you agreeing to a medical furlough. He didn't say that. He said a bunch of stuff, which you can discern what that means, and I'm not saying that your interpretation is not reasonable. All I'm wondering is, is it the only one that you could have, the only reasonable interpretation? And if it's not the only reasonable interpretation, I take it you concede that under clear error review, you lose. Yes, Your Honor, but it is the only reasonable interpretation because the testimony, again, was consistent about what was said and how it was conveyed. Now, again, I'm not saying that we have a verbatim transcript of what was said, but every time a witness was asked what was said to Mr. Schobert, every time that the witness testified, it was clear that there was a condition. It was conditioned. It was, you know, you want treatment, well, you need the furlough so that you can get treatment. That means that there's a condition there. To get treatment, you need the furlough. Every time a witness testified, that is what was conveyed to the court. May I ask, in your brief, there's some attention paid to the question of whether there was a lie to Mr. Schobert about there being a condition of essentially that he agreed to allow the weapons to be removed before a medical furlough would be issued. Why is that a lie? In fact, that's what the county attorney told the sergeant. Well, Your Honor, my position in the briefing is that the evidence does not show that that is actually what happened, that my client's relinquishment really, or excuse me, that that actually triggered relinquishment or the furlough, excuse me, because the furlough order doesn't have that condition in it. The request for the furlough order doesn't have that condition in it. And the testimony kept coming back to it being a court condition. Now, having said that, Your Honor, my primary focus, and I think the bigger problem, is this coercive conditional statement that I began with, because that alone is dispositive of the issue. And certainly the court wouldn't have to even address the second part if it does agree with me on the first. Is it legal error or is it clear error that you're arguing? Well, it falls under clear error in the sense that I'm saying that the testimony contradicts the court's conclusion. Does it? The court said that the deputies never expressly said, unless you agree to the medical furlough, then you can't have any treatment. Or unless you agree to the consenting to search your house, you can't have it. That's what the district court said. And my question is, was that legal error for the court to say that? In other words, to say that you, the defendant, has to understand that that's what's said before it can be coercive. I guess I'm not following that part of the question, Your Honor. My understanding of the order wasn't just that the court didn't say, well, here's the court's order in my understanding. There was no threat and there was no suggestion that treatment was conditional relinquishment. I am saying that the court's finding that there was no suggestion is clear error and contrary to the evidence. I don't know where you're getting the word suggestion. What the court says is, first, it was clear that Mr. Shilbert's medical care and treatment was not conditioned upon him allowing officers to retrieve the weapons from his home. And what I wonder is if that's legal error for the court to say they have to say these words before it can be coercive. In other words, I don't know that the court really ever dealt with what you're talking about, which is the way that a reasonable person might understand these words that are said, if them, would be coercive. Instead, the court says, reading this very technically and word for word, the deputies never said unless you do this, you can't have medical care. Well, Your Honor, to the extent that this court reads the transcript as saying that the court never resolved this particular claim, I mean, that would satisfy clear because the court's not addressing an important fact that goes into the totality of the circumstances test. And that's I have the citations in the brief where a court does not address a particularly salient factor. That's clear error. Now, I certainly read the transcript in a different way where after the court says, well, as a matter of fact, he was going to get treatment no matter what. And I'm paraphrasing. Then he says, and he did not even suggest that treatment was conditioned on on relinquishment. And that's really the focus of my argument. And that's how I read the transcript. Where are you to get the word suggest? And if it's going to chew up your time, don't worry about it. No, it's OK. So I do cite this in the brief, I believe, Your Honor. While the testimony was back and forth regarding and this is on page 138. That's what I'm reading. OK. There was never any threats or indication that he could not continue to receive treatment or would not continue to receive treatment if he did not consent to removing firearms. So no indications is the is really the language I'm latching on to not suggest the indication. And so that's what I'm saying is that the court committed clear error in finding that there was no even indication that was clearly false and contradicted by all of the testimony elicited at the hearing. So are you backing away from the idea that the medication and the recent seizure contributed to the involuntariness of his consent? We are on. I'm not pushing that as the basis for my argument. Certainly, it's definitely relevant in the totality of the circumstances under the Harrison factors. But for our purposes, even if he had been not on any of the Lorazepam and completely coherent, we would still have the same results. It wouldn't change what was told to him, what was implied, and that he consented based on this. So it's certainly relevant as a background factor, but I'm not pushing that argument. What worries me is it seems like just listening to your argument, the things you want to talk about all require us to draw inferences in your client's favor and not in favor of the district court. Well, Your Honor, I'm not. Again, I'm not saying anything. I'm not contesting anything that the court found regarding what was said or who was credible. I mean, this is just a plain, simple, logical entailment of what is being said and what is clearly conveyed. In fact, as I said at page 113, the court appears to have the same understanding that I do. So I'm not saying that we're weighing sort of competing inferences. This was the only inference any reasonable person would have drawn in his situation in the emergency room for all who were there to hear it. Well, it has to be the only reasonable inference that – well, your inference has to be the only one that anyone could draw in this situation, because the district court obviously had a different view of the record of those same words. And let me do a slightly different point. The word indication, which has been interpreted as suggestion, even if that were true, that there were an indication that there was a relationship between medical treatment and agreement to the furlough, is it clear as a matter of law that such an indication as opposed to an express condition would be sufficient to overbear his will? I believe it would, and I would direct the court again back to Deputy McClain's testimony when she's talking about on page 35 what my client said in response. And she says, yeah, he needed medical care. No, no, no, no, no. Your client's subjective view doesn't matter. What matters is would it objectively have been sufficient to overbear his will? And so what you believe doesn't matter either, but what I believe doesn't matter. What's the law say about whether that kind of – taking the phrase suggestion would be sufficient to overbear a person's will? Yes, Your Honor, it would, and I direct the court to the Ferguson case that I cited. Certainly no one disagrees here that in these circumstances my client needed medical care for a potentially fatal condition. Every witness understood that. So this is potentially life and death for my client. And telling him or conditioning this, suggesting to him that he needs to consent in order to get that treatment, left him no meaningful choice but to consent. And that is the essence of coercion, Your Honor. Why are we supposed to draw that inference when he apparently felt like he was in good enough shape to go with them to his house? Well, Your Honor, I don't know that we can get inside his head in that. He is requesting that. But to say that he felt he was in good enough shape, I don't know. It just shows that he was concerned. That's really the only inference I think we can draw. And, Your Honor, I'd like to reserve the balance of my time. But he didn't ask – he didn't say, explain this to me more if I don't sign, then what? He didn't ask for explanation because the implication was crystal clear to him. He did not need further explanation to what he was told, which is that you need to consent to guarantee further medical treatment. What is your view on the subjective versus objective test here? What should we be evaluating? Whether a reasonable person in his condition under the circumstances of this case would have felt like Will was being overcome? That is correct, Your Honor. Let me ask you, and we'll be a little lenient on time here. Let me ask you, the government submitted a supplemental authority as it relates to the Morgan case, I believe, and I don't think there was a response from you on that. So do you believe there's anything left of your argument about 9.20 in light of Morgan? No, Your Honor. I don't have a basis to distinguish Morgan, and I'm just going to maintain my second argument for preservation purposes. I didn't have any other response.  If I may reserve my time. May it please the Court. My name is Christine Martins, and I represent the United States. So the United States is asking this Court to affirm the district court's judgment and find that it did not commit clear error when it determined that Mr. Sjobert voluntarily consented to the search of his home, revealing the offending machine gun conversion devices at issue. When we review this, the Court had some questions thinking about our standard of review, and I think that it's important to note that this is a factual question subject to that clear error review standard we've been talking about. And what that means here is that if there's any rational basis apparent on the record to support the district court's determination, that this Court really must affirm. And in any instance where there's more than one reasonable interpretation of the facts in the record, this Court needs to defer to the district court's finding of facts. So here, the district court found overall that the environment wasn't coercive, that nothing about what the officers did was coercive, and that Mr. Sjobert's overall medical condition didn't prohibit him from consenting. So when we start to dig into those facts, I think it's no surprise that I fully disagree with defense counsel about what's reflected in the record. And there's a couple of things that I think are illustrative of that point. So defense counsel was talking about the exchange between trial counsel and the court and read this court a small snippet of that exchange, but importantly left off the last sentence. So the court says, but the question here isn't necessarily what the order says, but what the officer told Mr. Sjobert. And as I understood it, he said so that you can continue to get your medical treatment and whatnot and meeting conditions of his bond. He didn't say, or the record doesn't show, that he said if you want to stay in the hospital, you've got to consent to the search. So the question that the district court was asking didn't assume that there was this threat. In fact, the district court, in posing the question to defense counsel, said that the deputy did not make a threat. I think that in viewing this record, if you go to volume four for our transcripts, one of the best places to look at the exchange is really on page 66 and 67 of that transcript. And there, Sergeant Obreth explains that this exchange really happened in two steps. So after he had talked to the county attorney, and it was the county attorney who said that to do a medical furlough order, Mr. Sjobert needs to be in compliance with his bond conditions, especially. Did you preserve an argument related to that? Did you make that argument below that statement about the county attorney setting that condition? Well, we certainly didn't waive it, Your Honor. And why not? I mean, you're stating a conclusion. Why not? I mean, if you didn't raise it below, why didn't you waive it? Well, we talked about the totality of the circumstances below. So I think it was included in discussing the totality of the circumstances. The totality of the circumstances that you did not highlight, though, to the district court, right? Well, our pleading below was rather bare bones, and then in the argument to the court, there certainly wasn't any waiver or distance from the argument as the defendant here has suggested in the reply. I'd appreciate not the conclusion but an answer to the question, did you raise that particular point below? I don't think it was necessarily our duty to raise it, so I guess I don't understand. I'm asking you yes or no. Did you raise it below? Yes. It was discussed below with the district court in the exchange. Did you explicitly talk about the county attorney providing that condition to Sergeant Oberth below? Yes. Okay. Where did you do that? That was in the exchange with the district court at the close of the hearing, so specifically on page 117 of the record, the court asks the trial prosecutor below, as I understand, Sergeant Oberth had a conversation with the county attorney, and based on that conversation and the furlough order, he understood they needed to pick up the weapons at the house. The trial prosecutor answers, I think that testimony is accurate. So it was certainly discussed below. It was part of the argument below. Both deputies testified about it below, so it's no surprise in the record on appeal here, and I think it's fair to say that there wasn't detailed discussion about the law enforcement role of the county attorney, but it's very clear in that testimony that the facts were it, and it was discussed. So I don't understand the waiver argument that the defense has made here in terms of just explaining the underlying background with regard to the county attorney's requirement that the weapons be relinquished. Counsel, let me ask you about this. The language that has been highlighted, the district court, there was never any indications that he could not continue to receive or would not continue to receive that treatment. If he did not consent to them removing the firearms, it may be clumsy language, but it is throughout the transcript something like this, the deputy speaking, recounting the conversation with the defendant. Then we can do a medical furlough so that you can get the treatment that you need. So, and there's an if and then elsewhere. If I'm just someone lying on a hospital bed and I hear these words, why would I not reasonably interpret them to mean you have to agree to this or else we can't give you medical treatment? Why is that even being discussed unless that's important? Well, that's where this two-step interaction is really helpful. As I was talking about when Sergeant Obreth testifies, he explains to Mr. Sjobert that the county attorney said to do this medical furlough order and relieve the sheriff's office of the staffing problem, and his focus is on the staffing problem. And so he's not talking to Mr. Sjobert about his medical treatment when he begins the interaction. This is, I understand your argument, I understand what you're saying, but we're talking about somebody on a hospital bed who hears the words that I just read and isn't considering all of this in one big piece or something. And those words that I just read, aren't those an indication that it was premised, that continued medical treatment was premised on a consent? Just that much, and then you can branch out from it. No, Your Honor, I really don't think so. And I think that the testimony is really best laid out, like I said, at page 66 and 67 of the record, where Sergeant Obreth says he's talking to Sjobert about the staffing problem. And so he's talking about the need to relieve the sheriff's office of its issue. There's only two deputies working that day, and so a full 50% of the available sheriff's deputies are tied up sitting with Mr. Sjobert in the emergency room. So Mr. Sjobert, on being told about this problem, says, well, I'd like to go with you to the house. And that's when medical treatment enters the conversation. That's when Sergeant Obreth says, you need to get your medical care. You're 32 pages after what I just read. Yeah. So I don't think you say that's when it started. So I think you're talking about Deputy Colleen McLean's testimony, where she testifies just in a couple of sentences in a very summary fashion, and then Sergeant Obreth testifies later. And what's, I think, significant about that is that she's the deputy. McLean is the deputy who sits with him the whole time. She's not the deputy who actually has the conversation with Mr. Sjobert. Sergeant Obreth is. So Sergeant Obreth, when he testifies, that's the testimony that gets into this and sort of pulls this apart to talk about that sequence of events. And what is coming through in Sergeant Obreth's testimony is his concern is about the staffing issue, trying to solve the problem that the sheriff's office has sitting on Mr. Sjobert. And, for example, he says, my conversation with him was strictly focused on the fact that we didn't have the personnel to sit with him in the hospital. The consent search has nothing to do with that. They could have done the medical furlough and been out patrolling the streets of Orland, Wyoming, without having it searched. And then when the medical furlough was over, he's supposed to report back. He's going back to jail. And then we can start talking about bond conditions again. But throwing the consent into this medical furlough, it just doesn't fit. It doesn't have anything to do with the need. The need for the two deputies to be out because they're shorthanded, that has something to do with the medical furlough, but it has nothing to do with the consent to search. Or do you disagree? Well, I think it has something to do in the sense that that was the motivation to seek that consent. The chain of events was they had this staffing problem. Sergeant Obreth talked to the county attorney about getting a medical furlough order. The county attorney says, well, to do that, he needs to comply with his bond conditions. Why? He's not being put on bond. That is absolutely true. And I think it's fair to point out that the bond order and the medical furlough order don't expressly incorporate that. Well, if you're the defendant, wouldn't you be pretty confused by what's obviously confusing me? I don't think so, Your Honor, because, you know, it doesn't really matter that that paperwork's a mismatch. At the end of the day, Mr. Sjobert had seen the state court judge that morning, presumably had the bond conditions explained to him, and so he knew when Sergeant Obreth approached him that these were legitimate bond conditions. They should have been explained by the state court. And there's nothing nefarious about the county attorney saying, look, if this guy's going to be loose, he's got to comply with his bond. He's not going to be loose. He's on medical furlough, and then he's got to go straight back to the jail. Well, as a matter of fact, he is loose because nobody's sitting on him. He's no longer in custody, and he did abscond afterwards. There's no security that goes with custody. That's the whole point of the medical furlough order. So it's on his promise of good behavior that he will voluntarily surrender himself back to law enforcement once he's discharged from the hospital, which he, in fact, failed to do. So he really is loose, and there is this public safety concern, given that he showed up heavily intoxicated, armed with a pistol, and got himself into this mess in the first place with that alcohol and guns kind of problem. So there's a reasonable public safety problem that the county attorney is seeking to solve by asking for consent to search. So what is the interplay between the bond conditions and the medical furlough? You have a prior bond order by the state court that says you're not getting out unless you relinquish all your guns, and then you have medical emergencies in the hospital. You're going to effectively be letting him out with a medical furlough, but you have in place a bond order saying he can't get out without relinquishing his weapons. Well, admittedly, the state court paperwork leaves something to be desired. That's for sure. But there's no reason to doubt what testimony was available on the record. It was that sequence of events that we talked about, and with some background knowledge about how the criminal justice system works, it's unsurprising for the county attorney, the lawyer who would make the motion, to say, sure, I'll make the motion, sheriff's office, but you've got to do this first. And all of the reasonable reasons that somebody would make that inference are apparent on the record, all those public safety concerns given Mr. Schovert's behavior. So what happens to the bond order that is in place when the medical furlough is entered? Just as a legal matter, what happens to it? So what he was supposed to do is once he was discharged from the hospital under the medical furlough, he was supposed to go check himself back in with law enforcement. And at that time, presumably, he should have posted his $1,000 cash bond so that the bond conditions could be enforced and he could be appropriately out on bond. But, you know, as discussed at the hearing below, nobody really cared about that $1,000. Sergeant Oberth explained that the county attorney's focus was on the weapons. And, again, that makes perfect sense based on the public safety concerns present on the face of the record. So I think when we think about this test, it's really important to think about it in its totality of the circumstances, right? So we have a bunch of testimony from these two different deputies, and there's no recording. So there's the gist of the conversation. And I think that's part of why it's so important that Sergeant Oberth is talking about, look, my conversation was focused on our staffing problem. So he's not trying to imply that Mr. Sjobert's medical treatment is going to be conditioned on this consent. He's trying to have a straightforward conversation with Mr. Sjobert. You know, the questioning by defense counsel below is even let in with, it looks like you were very transparent with Mr. Sjobert about what was going on. And does it really matter what he thought? It matters what he said, right? It does. It does. But his thinking about it, since we do not have a recording of the interaction, informs what we think he probably said in the moment, right? Because we have to draw those reasonable inferences based on what we do have in the record. When we have both of these sheriff's deputies testifying consistently that they're trying to just make sure that these two needs are met, that the medical care and the medical furlough are taken care of, and they're competing needs, but that doesn't mean that Mr. Sjobert necessarily understood based on the totality of the circumstances. Well, in reality, the medical is going to be taken care of no matter what, right? Absolutely. But there's a suggestion. I mean, here's page 67, which you referred to, and the deputy. My response to Mr. Sjobert when he made that statement to me was that my only concern was that he get medical treatment that he needs, as though we really want you to, we hope you do, but maybe you're not going to get it. No. Unless it's not in here. No, Your Honor, that's really not a fair reading of the record, because there Sergeant Obreth is explaining that that was his response to Sjobert's offer to leave the hospital, which would have necessarily terminated his medical care at that point. So he's saying, no, you need to stay put and do what you've got to do. So we have this staffing problem that we need to solve, right? So I don't think that it's a fair inference from the record, and you had talked about that indication, right? And I think that what the district court is really saying when it's using that word, and may I wrap up my thought here? When it's using that word, he doesn't think that a reasonable person in Mr. Sjobert's position would have inferred from the deputy's conversation what the defense wants the court to infer. I see your point on that. Let me ask you this question just to finish up mine. And that is, if the panel disagreed with you and disagreed with the district court, more importantly, that there was no indication that medical care was contingent upon agreeing to consent, would that be in reverse? I don't think so, Your Honor, because, again, it's a totality of the circumstances analysis. So you have to sort of take the whole soup of everything that happened here and decide that that one fact is absolutely determinative. And the district court took all of the circumstances into account when making this ruling. And I think the fact that there was even back and forth shows that Mr. Sjobert didn't feel cowed or overborne when rendering his consent. And this follows up on the question I asked defense counsel, if it was, in fact, an indication or a suggestion. I mean, it becomes, in some part, a question as a matter of law whether the totality of the circumstances and that suggestion that is being posited would be enough. What do you think would be the best case as a matter of law that would point in your direction of saying that even if, assuming arguendo, that it is a suggestion or an indication, that nevertheless that would not have been sufficient to cow a reasonable person or believe that reasonable person's will was overborne? I think really our best case is right back to Sheckin Law versus Bustamante, because the Supreme Court in that case was looking at whether or not law enforcement would be required, excuse me, the prosecution would be required in every case to prove the actual understanding of the defendants and his legal right to consent. And I think that's pretty analogous here. Essentially, adopting the argument for Mr. Sjobert here would require the prosecution to disprove the idea that he maybe could have been confused. And the best way to do that is to require the prosecution to warn him about all the legal consequences. And that's precisely what the court said was not required of the prosecution in Sheckin Law. Thank you. Thank you. Did you have some additional time or no? I have 11 seconds, Your Honor. Okay. Make it a minute, please. Thank you. I appreciate it. Your Honors, under the totality of the circumstances, there are no other factors that the district court found that would have neutralized the coercion here. The district court relied on the cordial conversation, the fact that my client wasn't handcuffed, and that there was an open room to find, in addition, that this wasn't coercive. However, the fact is that my client was informed by implication that he needed to consent to get his absolutely necessary medical treatment. And overt threats, explicit statements that that's what's going to happen are not required. I cited Ferguson. Harrison is also a case I cited that shows that explicit threats are not necessary to coerce the defendant. And I see, Your Honors, I'm out of time. I respectfully ask that this court reverse. Thank you, counsel. Thank you both for your fine arguments. Case is submitted.